22-3193 Good morning, your honor. May it please the court. My name is Michael Keyvalve, law firm Wiener-Brodsky-Keiter PC, representing the appellant named in the caption as Banco Popular North America, but whom I refer to by its legal name, Popular Bank. The district court should have compelled arbitration in this case. The 2014 amendment amended and replaced all previous versions of the PBDNA. Is it your position that our focus really should be on that 2014 amendment rather than the other three or four? Yes, your honor, because I think that given the evidence in the record, the fact that the 2014 amendment was validly formed and separately supported by offer, acceptance, and consideration means that logically that 2014 amended agreement remains in effect unless and until something else modifies, rescinds, or replaces it by consent of the parties. Now, it's Popular Bank's position that the 2021 version of the PBDNA is the current version, which includes some changes that were made after 2014. But even if this court were not convinced that the 2021 version controls, it doesn't matter to the resolution of the appeal because both the 2014 and the 2021 versions required the district court to compel arbitration. Counsel, why wasn't the 45-day arbitration specific opt-out included in the cover letter with the 2013-2014 agreement? Your honor, the record doesn't reflect what the reason for the inclusion or non-inclusion in the cover letter. What we have is the letter. But the letter is misleading, right? It basically tells people either accept the attached changes or close out your account when in fact at least the 2008, which the plaintiff never received notice of here, gave him an opportunity to opt out and keep his account, just opt out of arbitration. I think that's what's problematic is the cover letter didn't tell him he had an option as an existing account holder to opt out. Your honor, I would address that in a few ways. First of all, Mr. Lipset didn't introduce any evidence in the district court. So there is no evidence that he found the letter to be misleading and no evidence as to him that it impacted his actions. The trial judge found that throughout the years he didn't receive proper notice and that he couldn't be bound by the arbitration because he didn't really assent to it. Because he didn't get one proper notice and two, that letter is misleading. I mean, you don't need a finding. You can read the letter and see that it's missing, right? Can you address why didn't it just say, you know, for existing account holders for the 2008 amendment, you have the opportunity to opt out and keep your account? Yes, your honor. I think that it's important to focus on the fact that unconscionability was not raised by Mr. Lipset and I'm taking this directly into your question. I don't want to get into the argument of whether the judge was relying on unconscionability or just mentioned that as a basis for the, you know, as sort of a, not a factual finding, but a term to describe the situation. I'm asking a simple question. Why didn't the 2013-2014 contain notice, the cover letter, that you have the ability to opt out if you're an existing member per the 2008 agreement, which he never got notice of? You can opt out, keep your account and opt out. Why did it say if you don't like these changes, you can close out your account? That's what it said, right? Your honor, the cover letter accompanying, excuse me, the 2014 amendment refers to the agreement as a whole. And so what's happening here based on what's in the record is that in 2014, and distinguished from a lot of other cases that have been cited, a letter with an actual complete copy of the agreement is sent by mail to all account holders. You're right. It referred to the agreement as a whole, but it also informed the reader, hey, you have, there's an arbitration clause, a mandatory arbitration clause. But it didn't see fit to explain that if you were an existing account holder, you could opt out. That's the problem, right? It chose to summarize some things and not others. Your honor, it's correct that the letter, the letter specifically calls out the arbitration, the existence of the arbitration agreement. And the distinction under New York law is that if a, there could have been a challenge to an arbitration agreement that was hidden. And in this case, in this letter, it's clearly not hidden. And so I don't think that it's a fair conclusion that the letter is misleading, aside from the individualized nature of the inquiry as to Mr. Lipset, because the letter is designed to send this updated agreement to different people in different circumstances. And so it's a cover letter with an agreement. This agreement is new. It says clearly that it replaces previous agreements. And there are two ways that Mr. Lipset could have opted out. Number one, he could have rejected the agreement as a whole. And by rejecting the agreement as a whole, that's all that's required under New York law. He didn't need a separate right to opt out to the arbitration clause. Then if you look at the arbitration agreement itself, and this is an issue where the parties have disputed what the construction of those terms are. But from our perspective, the second of the two opt outs in that specific agreement in 2014 would also have enabled Mr. Lipset to reject the arbitration provision and keep the account open. But that's not dispositive. And this is the distinction between 2014 and 2021, right, that a bank is able to make changes to an agreement over time. And different types of changes require different types of notice. Except when you go to the arbitration clause, that's attached to that cover letter. It says if you are an existing customer and we are asking you to enter into a new deposit agreement within 45 days. So that was misleading from the letter. I don't think so, Your Honor. I think that the fact that it didn't specifically, it called out the arbitration agreement. It put Mr. Lipset on notice to go look at the arbitration agreement. It doesn't have to restate all of the options there. But because the agreement as a whole is being presented as an amendment of the whole agreement. So how then is it not contradictory to end that letter to say if after reviewing the agreement you don't like it, you have an option, close out your account. You have 60 days to close out your account. But that's true, Your Honor. He had that option. And that option is sufficient under New York law to establish formation of this amended agreement. Is it an amended agreement or a new agreement? Because your company took a different position at another time and said that that would be a new agreement. So why wouldn't this be a new agreement? Your Honor, I don't believe that my client took a different position. And I would note that the extra record materials that were included in the police brief- I think the judge found that you couldn't have it both ways. The judge, the district court, in our view, misunderstood the record in that regard. The district court was concerned between the 2014 and 2021. And I can address that distinction. But specifically with respect to 2014, the district court had a footnote discussing whether there was a novation. And I think that's not quite the right analysis. Because a novation, as I understand it, would also get rid of the previous agreement. It totally replaces- Right. Whereas this is an amendment that replaces this agreement going forward. And so the letter is very clear that it replaces. It's very clear in providing that information. Now the district court had two concerns. One was the 2008 agreement. The 2008 version is not relevant because of the formation that is shown with 2014. That is to say, either 2008 exists and is valid, in which case there's no problem without having 2014 opt out, also opt out for 2008. Or 2008, and the record is silent on this, or 2008 isn't effective. And if 2008 isn't effective, then it also makes no difference if 2014 couldn't opt out retroactively to 2008. I was struggling to see how 2008 isn't relevant when the provision in 2014 references existing customers. So since he was an existing customer in 2008 when the arbitration clause was first added with the knocked out provision, he never got notice of it. You don't dispute that, right? No, Your Honor. The record is silent as to notice in 2008, and we do not concede that he did not receive notice, nor in fact did Mr. Lipset claim in the district court with any evidence he didn't submit a declaration or any evidence that he didn't receive 2008. But 2008 is a long time ago. Whose burden is it? Now you've got my attention. Whose burden is it to show assent in connection with the motion to compel arbitration? In other words, whose burden was it initially? Was it Popular Banks or Mr. Lipset to show that he was aware or was on inquiry notice that there was an arbitration provision? Your Honor, with the motion to compel arbitration, the burden of establishing the existence of an agreement to arbitrate was Popular Banks, and we did so. So you had to put in, as your client had to put in, some evidence that he was on inquiry notice or actual notice. Is that correct? Yes, but we did not have to do so as to 2008. We had to do so as to the time period. Okay, so I'm just focused on 2008. Was there any evidence with respect to 2008? The only evidence with respect to 2008, and the answer is generally no. I'll take no. Right, but the Popular Bank was not relying. So you're relying on the 2013-2014 agreement? Yes. And I just want to pick up on Judge Kahn's not a lot of time, but I do want to make sure that I understand the argument that you're making. So Judge Kahn has asked you a series of questions about, frankly, in part the difference between the 2014 notice, that is the cover letter, and the actual language of the agreement. Is it your contention that the language of the agreement that refers to 45 days after the date we opened your account, this is page 8, J167, if you're an existing customer and we are asking you to enter into a new deposit agreement, for someone who has a pre-existing deposit agreement, doesn't want a new deposit agreement, who's had one since 2004, as in this case, is it your contention that that would be crystal clear or clear enough to that person that this provision applies to them? Your Honor, we do believe that this provision applies to them. Well, you believe that, but what would lead me to know, if I were in Mr. Lipsitz's position, that this provision applies to me? The fact that he is an existing customer, there are two opt-outs, and the second opt-out has to do with his being an existing customer and his having been sent a new agreement that specifically says in the letter that it replaces the other one. But I would note, Your Honor, that even if the court was, we don't need the opt-out to the arbitration to have been, this arbitration-specific opt-out in 2014 to have been available in order to prevail, because the ability to opt-out to the agreement as a whole in 2014, when we look at other cases under New York law cited throughout our briefs, the take-it-or-leave-it is okay in New York. And he clearly had, Mr. Lipsitz had an opportunity to leave it by the clear terms of the 2014 letter. And I see that I'm out of time. You have reserved some time for rebuttal. We'll hear from Mr. Lipsitz's counsel. Thank you, Your Honors. May it please the Court? My name is Sue Naum from the firm of Reese LLP. I believe Your Honors fully understand the facts of this case, and I trust that our briefing addresses all of the issues that my esteemed colleague has just raised, and I think Judge Marrero has provided a very detailed and erudite opinion for this Court to affirm. Rather than repeat arguments, I would like to take this time to urge this Court to issue a published decision in this case to address some of- Let's go back to square one, then, because never mistake questions for views. Fair enough. Why isn't the combination of the notice, which is very focused on 2013-2014, the combination of the notice slash cover letter that the bank sent and the agreement itself, which is attached to that notice, why isn't that enough? And, you know, the notice says it may warrant special attention. There continues to be a mandatory arbitration provision that includes a class action waiver. Please take the time to familiarize yourself with these provisions and your rights and obligations. Why isn't that in combination with the agreement itself enough to alert- There's an arbitration provision now. Your Honor, that is a valid point, and had that notice been properly provided and clear, we would be in a very different position. That notice is not clear to anyone, whether on this bench or a consumer. It has contradictions within itself. It says it's replacing the agreement, yet calls itself an amended agreement, as Judge Kahn pointed out. It asks you to review the attached multi-page agreement, yet gives you only five days before you're deemed to have assented, just simply by putting your ATM card and accessing your very own money. Is that five days from the notice? A reasonable reading of that is five days from the time you received the notice. But that's not what it says, Your Honor. It says from the date on the notice. And where does it say that? It says it right in that paragraph, Your Honor. And we cite the entirety of that- From the date of this notice? That's right, Your Honor. The date of this notice is January 17th. So why is it a reasonable reading? It's five days from the date you received the notice. Because it doesn't say that, Your Honor. It says the date of this notice, and the date of that notice is January 17th. I think that's a very clear and unambiguous reading of the notice. What principle of New York law are you relying on for that? That when a notice refers to the date of this notice, it's the date of the notice that appears on the notice as opposed to the date of receipt. Either way, Your Honor, it's five days. Five days that you don't have access to your own money, five days that you can't use Apple Pay, that you can't use an ATM, that you can't have an automatic deposit of your bank. So you're relying on some principle of unconscionability. No, Your Honor, I am not. What are you relying on? I'm relying upon the language that is clear and unambiguous. That is the way that we interpret language, Your Honor. No, no, but in answer to my question, you said it's five days, Your Honor. Yes. Five days where you can't do X, Y, and Z. Right. But this is potentially a big deal because it affects banks and consumers throughout New York State. Absolutely, Your Honor. And so I assume, I don't know, that there's some language in many of these deposit agreements, and we're all in the same boat, that refers to some set of dates. It could be five days, it could be ten days, I don't know, pursuant to which you've got to close out your account or you can't use your account. And if you use it within that period, then you're bound by the agreement. Is that fair? That is fair, Your Honor. Okay. So when you tell me five days is too little, what principle of New York law or policy do I turn to to make that determination? Because I'm just me. You know, I'm not, I'm no expert. I would refer the court to the fact that sometimes the bank says five days from the date of a document, and sometimes it says when you receive a document. So the bank itself makes that distinction between when you receive a document and you have 45 days after you receive a document to send a letter opting out,  In this case, it is the date of the document, which is January 17th. Does that answer your question? That answers it in part, yeah. Okay. Thank you. What I would advocate for, Your Honors, is that there are two key issues that were left undecided in the unpublished decision in Buho. And this court has the opportunity on an entirely set record that's complete, and before Your Honors, to clarify for litigants and district courts on these two issues. First, we respectfully ask that this court affirm the district court's adoption under New York law of the holding of the seminal case Beatty v. Bank of America. Second, we ask that the court affirm the district court and hold it in the context of bank accounts, where a bank is the custodian of a customer's assets, that a customer cannot be held to have assented to a material change in his banking agreement simply by continuing to use his account. That alone should not constitute assent. So in response to that statement you made, I do have a question. Absolutely. Would there be any valid way for a bank to include an arbitration provision in the depository agreement without a knocked-out clause? Is your argument that the banks are simply out of luck when it comes to an existing customer who consistently opts out? Do you see what I mean? I do. Banks are—businesses are going towards arbitration, right? And arbitration includes a class action. And my question to you is, is there any way a bank could impose an arbitration agreement on existing customers without an opt-out? Because if you have an opt-out, then presumably a customer who is duly noticed can opt out continuously. Absolutely, Your Honor. We as consumers are constantly being asked to click through and agree to amendments. All the time. We get emails that have click buttons. We see screens in front of us that have click buttons. And this Court has always said that is assent as long as it's clearly—the notice is clearly provided, whether express notice or implied notice, which, Your Honors, that did not happen in this case. So is your response then yes, a bank could add an arbitration clause without an opt-out provision, or they always have to have an opt-out provision? Do you see what I mean? Yes. Your response includes an opt-out, presumably, because if you don't click yes, then you're not opting in. Well, Your Honor, in the context of a bank agreement, we believe there needs to be a meaningful opt-out just as the District Court found. Because the whole idea of consent and manifestation of agreement is it has to be reasonable. The parties have to reasonably believe that their conduct is manifesting assent. In this situation where the consumer is merely accessing his own money, simply using his account isn't a reasonable manifestation of assent. He just wants his money. So we do believe there has to be something more, a meaningful opt-out, as this District Court found, in order to say, yeah, when you used that ATM machine, you did mean to agree to this amendment. And I think that is the way that a reasonable consumer approaches their money. And I think that is the major difference between bank accounts and credit cards. If I'm borrowing a bank's money, there are a lot more bells and whistles attached to that. And it is fair to say— As opposed to your own assets, you're saying. Exactly, Your Honor. So if I'm borrowing the bank's money, yes, there are lots of bells and whistles. And when I borrow that bank's money, I am agreeing to their terms. When I'm accessing my money, I'm not agreeing to— So let me just go back to New York law. I'm very focused on the law. This is not these generalized principles. I think in your debating body case is a California law case. What can you point me to in New York law? New York law decisions, some statute? Absolutely. That says that this opt-out provision, if you want to call it that, you can describe it as that, is insufficient as a matter of New York law. So this case is not the only time that a district court case has applied Beatty in this circuit. Three times that has happened. No, no, no, no, no. Yes. You're now saying federal district court decisions. That's correct, Your Honor. I'm not interested in federal district court decisions. I'm interested in New York court decisions that tell me, Judge Lohier, this is what a proper opt-out provision looks like in this context of deposit agreements. Well, Your Honor— Because I think you just answered the question that there are opt-out provisions that might satisfy the notice requirement. Right, Your Honor. And I would cite Stark v. Square—I always want to say Square Pants, but it's not Square Pants. So in Stark, this court explained the basics of New York contract law, which is the same as contract law all over this country, which is why Beatty is adopted in various jurisdictions, because it's restatement of contracts. This is not specific to New York. It's not a statutory interpretation. But the notion is that in Stark, you have to have a meeting of the minds, and you have to have a clear expression of assent. And we're simply putting the proposition forward that there is no reasonable interpretation of assent in the context of a banking agreement unless you have some sort of opt-out provision that is meaningful. Otherwise, I'm just taking my money out. So unless there was some other way for me to opt out, and we would submit closing of a bank is not a meaningful option here, because unlike a credit card, I don't just cancel. I don't just call them up and say, I'm done. Closing of a bank means there are months of checks outstanding. I don't have to- What if the bank, just hypothetically, what if the provision had said, you've got 90 days to close your account, and then you're opting out? Would that be enough? I think there are certainly factual scenarios, not before this court, where the court could say, you know, that was reasonable. My question is, is 90 days enough? I would disagree, Your Honors, because- Is a year enough? I think six months would be enough. Why six, what in New York law tells me six months? You're asking us to make stuff up? No, Your Honor. So what in, well, and I'll say that respectfully, but it's, you know, what's the difference between six months under New York law and 90 days? What's the difference between 90 days and, you know, 10 days? Well, six months is the time that banks give you until your check is canceled. If you don't deposit in six months, your check is canceled. Okay, so that's- So that's a reasonable amount of time for reasonable people to say, okay, I have six months. I have all these outstanding checks. Grandma hasn't cashed her check yet, but in six months, that's canceled. You're also telling me, I mean, these questions are all designed for a particular purpose. You're telling me that there is, you cannot identify a New York case from New York courts that with more precision tell us what an appropriate opt-out provision would be, what a satisfactory opt-out provision would be in the context of bank deposit agreements for consumers as a matter of consumer contracts. Is that correct? That is correct, Your Honor. So why should we certify this question? Well, first of all, this is, again, basic contract principles that we're talking about, and courts across jurisdictions cite each other for those basic propositions. So the notion that we would certify to the highest court of New York, not on a statutory issue, not on something that is unheard of in New York, but rather a restatement of contracts, I don't think that that's necessary. The reason that Beatty is cited across jurisdictions and New York courts are cited by the Sixth Circuit, for example, is because these are underpinning ideas of what contract is. Are you familiar with the restatement of consumer contracts from the American Law Institute? I am not, Your Honor. Are you familiar with what the restatement of contracts is? Absolutely, Your Honor. Okay. So we've got a problem, it seems to me, that I have not heard a single citation to a New York case understanding that there are these broad contract principles, but New York is very different, particularly with banking, an important core part of the business in New York. And I've just not heard a single case or decision that supports or refutes what you're saying. So why, again, what's the problem with certifying the particular question, unless there's some other basis that you want to argue outside of the 2013-2014 agreement? Well, absolutely. I would say that this court has already described exactly what New York law provides for formation of contracts. So to say that I haven't cited New York state law cases, I've cited Second Circuit cases that then cite New York state cases. With respect to notice, the adequacy of notice. And also assent, Your Honor. Notice and assent. What does assent look like under New York law as described by this court? So this court has already ruled what assent looks like, and assent has to be a clear manifestation of agreement under the circumstances, whether by words or conduct. And I'm saying to this court that when you take those principles laid out by this court, then you reach the conclusion that bank accounts are different than credit cards. And Phil Ho, in a footnote, number four, had that same discomfort about the notion of applying credit card cases to banking cases. And I am asking this court, this panel, to take up what was left undecided in Phil Ho, because the record wasn't complete in Phil Ho. It was remanded back to the district court. Here the record is absolutely complete. This court has an opportunity to give guidance on this very issue that is troubling litigants in district courts. Thank you very much. Thank you, Your Honor. Your Honor, I have five quick points in rebuttal. First of all, the time period for Mr. Lipset to reject this agreement was not five days. If we look at Joint Appendix, page 159, it says you may opt out of it by closing your account and withdrawing your funds within 60 days of the date of this notice. Otherwise, only if he does not opt out by doing that, then you will be deemed to have accepted the amended account agreement on the earlier of two dates. And the record does not reflect here which of those dates would apply, but that doesn't matter because since Mr. Lipset did not try to opt out in 2014, and that's undisputed, the timing of how long he had is not at issue. This court's unpublished decision in filio, I think there are a couple of points I would make in response. One is that the footnote that's cited by a plea, which is dicta, was concerned about a 10-day period as opposed to the 60-day period that we have here and was also distinguished in Valle, the southern district case that we cite and rely on. The second is that the reason there was a remand in filio was because there was a dispute between evidence provided by the two sides. Here, there is no evidence from Mr. Lipset at all. There, there was evidence that Mr. Filio said, I went and got the mail they were holding for me and it wasn't there. And so that raised a factual issue for remand. Next, internet click buttons are newer and they're distinct from mail notice, which is well established. I would point the court to Broward v. Gateway 2000, which is the first department appellate division decision cited in our briefs, 676 New York State 2nd 569. In that case, a computer that had been paid for and purchased ahead of time was mailed and it had an agreement in the box and that was enforced. The, the appellee is asking the court to adopt a requirement for a separate opt-out for deposit agreements for bank accounts that finds no support in New York case law. The Stark case is not about that. The, the, an appellee fails to address the cases both from this circuit, like Ragone, which controls on, on employment. And so the idea that in an employment situation where someone, in order to continue employment or lose their job has to agree to an arbitration agreement with no opt-out, that's valid. The idea that a bank account, and credit cards are okay, employment is okay, but somehow we should have a new rule that bank accounts are different, I don't think is supported. But I would also cite Botini v. Lewis and Judge Company. That's the third department New York appellate division. Why, why shouldn't we certify this question? I'm just, I'm not suggesting that we should, but would you have an objection? I, I don't think that we, we need to, Your Honor. I, I think that the New York case law is very well established through the appellate divisions in various districts and cases that we've cited in terms of the idea that a separate, I'm not sure if I understand properly, this question about bank accounts and a separate rule. And, and so I don't know what the basis for an eerie prediction in light of that precedent would be otherwise. I, I, I don't think the court needs to do that. I think that the court can, can say that there's no support in, in New York law. And the cases in this circuit that have noted commonality between, or similarities between different states' contract law dealt with the elements. But your argument was that the Batty case out of California doesn't apply because this case involves New York law and that involves California law. But I never understood why, if the laws of the state are the same, are you saying New York law differs from California law? And if it does, then shouldn't we certify? Your Honor, I, New York law does differ from California law as set forth in Batty. Because in New York law, one does not need a separate opt out to an arbitration provision, as long as there is formation of the agreement containing it. And in this case, of an amendment. You mean notice and assent? Correct. So how is that different from New York law?  California law considers this, considers the, basically California law creates a different requirement. And we haven't. How? I'm still not getting the difference why New York law is so different from California law. And that, albeit persuasive case, obviously not a, not controlling of this circuit. But what's the difference? In the case of, right. So in New York, there is no requirement for an opportunity to opt out separately from an arbitration provision as opposed to the agreement as a whole. Batty is premised on the idea that there's some sort of right to keep doing business in the future with the company that says, no, if you're going to do business with us in the future going forward. How is that different than California? Well, that's California, Your Honor. And in New York, we don't have that rule as shown by Botini, as shown by Brower, as shown by Ragone. The idea that they take it or leave it if you want to do business with us going forward, which has been, we cite cases in the financial services industry where this is, you know, courts have pretty consistently upheld this. What about Sedillus versus Providian? It's a New York case that said that the arbitration agreement imposed by the bank was enforceable, expressly relying on the existence of an opt-out provision. Yes, Your Honor. So two things about Sedillus. First of all, the presence of an opt-out provision defeats an assertion of unconscionability, because there's just nothing to, the person didn't have to take it, so there's no question it's not unconscionable. But New York law does not stand for the proposition that an arbitration on a take-it-or-leave-it basis without an opt-out would be unconscionable, and that is a showing that Mr. Lipset has not made in order to compel. Sedillus is the easy case where there's an opt-out provision. Yes, Your Honor. It's also a little bit of a complicated case only because the causes of action are under New York law, and the agreement itself is New Hampshire law, and so. Since you have a problem, I mean, I'm wondering why you resist the notion of sending this to Albany, this question. And I can think of two very good reasons to resist it, time, money. But is there any particular other reason why you think this isn't something we should give the Court of Appeals to crack at? Your Honor, I think that this panel certainly can certify the question. I am not philosophically opposed to the reference. I think that time and money, but more importantly that I don't think it's necessary because I think that the cases are clear. And so, frankly, I think that given that the state of New York case law is very much in our favor, that's why I'm not urging. I don't see the need for it. Thank you very much. Thank you.